# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  **v.**                                                       **Case No. 09-CR-18**

**DONALD JEFFERSON**
    **Defendant.**

## DECISION AND ORDER

The government charged defendant Donald Jefferson with possession of two machine guns, a short-barreled shotgun and a silencer, all in violation of 26 U.S.C. § 5861(d). The charges arose out of the May 9, 2007 search, pursuant to a warrant, of a car wash operated by a drug suspect named Calvin Coleman, from whom defendant rented space. Officers located the contraband in a closet in the basement of the multi-unit building containing Coleman's car wash.

Defendant moved to suppress, arguing that the search warrant was not supported by probable cause, that the warrant failed to describe the place to be searched with sufficient particularity, and that the executing officers exceeded the scope of the warrant when they entered the building's common basement. The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, then issued a recommendation that the motion be denied. He concluded that the warrant was supported by probable cause; that the warrant was sufficiently specific; and that, although the officers may have exceeded the scope of the warrant when they entered the basement area, defendant lacked a reasonable expectation of privacy in that area.

Defendant objected to the recommendation regarding the probable cause and scope of the search issues. On de novo review pursuant to Fed. R. Crim. P. 59(b), I found the warrant supported by probable cause and denied that portion of the motion. Based on the lack of objection, and for the reasons stated by the magistrate judge, I also denied the motion as it pertained to the particularity of the warrant.

Regarding the scope of the search claim, I concluded that further proceedings were warranted. As indicated, the magistrate judge found that defendant lacked a legitimate expectation of privacy in the basement common area. He specifically noted the absence of testimony or an affidavit from defendant addressing the issue. In his objections, defendant conceded that based on the record made before the magistrate judge his claim of standing to object to the search of the basement closet was tenuous, and he attached to his objections two affidavits addressing the issue.

In his affidavit, defendant averred that in May 2007 he was the sole proprietor and employee of a business called "The Tint Shop," which was located within Coleman's car wash business. He stated that he had rented part of the car wash space from Coleman two to three months before the warrant execution. He averred that part of the area assigned by Coleman for his exclusive use was a closet located off of a basement area, and that he used the closet for items related to his tint business and other personal belongings. He stated that he gave no one else permission to enter or use the closet, and that only three people had access and keys to the car wash/tint shop premises and the basement area: Coleman, Coleman's employee Glover Morgan, and defendant. Finally, he averred that several days prior to the warrant execution he placed several firearms in a duffle bag, closed the bag and placed it in the closet, and secured the closet door by placing a car hood against it.

2

In the second affidavit, Morgan, defendant's cousin, averred that in May 2007 he washed cars for Coleman, and that defendant leased space from Coleman for a tinting business. Morgan indicated that the only people who had keys to enter the basement area were Coleman, defendant and him. Finally, he indicated that he was aware from conversations with Coleman and defendant prior to May 2007 that defendant's space in the building included the exclusive use of the closet in the basement area; he understood that no one was to enter or use the closet other than defendant.

Based on the presentation of this new evidence, I elected to hold a de novo evidentiary hearing to address the issue more fully. At the hearing, the parties agreed that I could accept defendant's affidavit as a statement that he harbored a subjective expectation of privacy; the issue was whether, under the circumstances, that expectation was reasonable. See United States v. French, 291 F.3d 945, 951 (7th Cir. 2002) (stating that a legitimate expectation of privacy exists when (1) the defendant exhibits an actual (subjective) expectation of privacy and (2) the expectation is one that society is prepared to recognize as reasonable). The government presented testimony from Detective Miguel Correa, one of the executing officers, along with photos of the premises. Based on a review of the evidence presented at the hearing, and the entire record, I now deny the balance of the motion.

## I. FACTS

On May 8, 2007, law enforcement obtained a warrant to search Coleman's business, the "Personal Touch Car Wash," located at 3716 West North Avenue in Milwaukee. The warrant described the building as a two story, multi-unit with store fronts in the lower and

apparent apartments in the upper with brown brick with brown trim. (See Govt. Ex. 1.)[1] The car wash was located in the rear of the building, with a two-car, white overhead garage door and a single car, brown overhead garage door.

Officers executed the warrant on May 9, 2007. Detective Correa testified that officers entered the car wash from the alley behind the building (Ex. 2) by breaching a pedestrian door next to the white, two-car overhead door (Ex. 3). Once inside, they observed car washing items, as well as motorcycles, parts and other vehicles. (Ex. 4-6.) They further discovered that the single car brown overhead door referred to in the warrant led to a separate space; officers did not breach the locked interior door that apparently led to that space.

Officers also observed a door directly across from the door they entered, which they breached, discovering a landing and stairs leading to a basement area accessible to other units in the building. (Ex. 7.) To the left, they observed an open door leading to a vacant store front and apartments. Officers conducted a protective sweep of this area, finding no one. A door to the right, which appeared to lead to another storefront, was locked. Officers did not enter this area. (Ex. 8-10.)

Officers proceeded to the basement area. To the left, they observed an entryway leading to an empty storage room under the vacant store front. (Ex. 11.) To the right, they discovered a room containing motorcycle parts and other items that appeared to be related to the car wash above, as well as a recreational area where it appeared people hung out. (Ex.

---

[1] In this decision, I refer to the exhibit numbers from the January 8, 2010 de novo hearing.

12-13.)[2] In this recreational area, Correa observed a closet with a car hood leaning against the door to hold it closed. (Ex. 14-15.) The closet door was not locked; indeed, it did not even close fully; nor were there any signs on the closet door. Correa moved the car hood and observed a hockey bag resting on a stack of wood inside the closet. Correa testified that the bag was open, and he observed various firearms inside. (Ex. 16.) Correa seized the firearms, which form the basis for the instant indictment, from the bag. (Ex. 17.)

On cross-examination, Correa testified that he did not know if the other units in the building were occupied at the time of the search.[3] Officers observed no one inside the building during the search. However, they did not search the entire building, conducting a protective sweep only in the area to the left of the landing, not the right. Correa confirmed that based on the lay-out other tenants in the building could access the basement area in which he located the firearms.

## II. DISCUSSION

### A. Legitimate Expectation of Privacy

A defendant who objects to the search of a particular area bears the burden of proving a legitimate expectation of privacy in that area. United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006) (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)). This requires the defendant to show a privacy interest not only in the seized item, but also in the area where the

---

[2]At the hearing before the magistrate judge, Correa testified that when he went down the basement stairs he knew he was leaving the car wash area. (R. 21 at 52.) However, he also testified that based on the items he saw in the basement recreational area he believed that area to be connected to the car wash. (R. 21 at 40.)

[3]Government exhibit 1, a photo of the front of the building taken around the time of the January 2010 hearing, shows that businesses were then operating in the building.

5

item was found. Id. ("The Supreme Court has declined 'to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched.'") (quoting United States v. Salvucci, 448 U.S. 83, 92 (1980)).

As indicated above, in order to establish a legitimate expectation of privacy, the defendant must demonstrate both that he held an actual, subjective expectation of privacy and that the expectation is one that society is prepared to recognize as reasonable. E.g., United States v. Villegas, 495 F.3d 761, 767 (7th Cir. 2007). In determining whether the defendant held a subjective expectation of privacy, the court looks at the defendant's efforts to conceal and keep private that which was the subject of the search. Id. In order to find the expectation of privacy reasonable, the court looks to the "'everyday expectations of privacy that we all share.'" Id. (quoting Minnesota v. Olson, 495 U.S. 91, 98 (1990)).

Although the inquiry is fact-dependent, courts have generally concluded that tenants in a multi-unit building lack a reasonable expectation of privacy in common areas, see, e.g., Villegas, 495 F.3d at 768 (citing United States v. Espinoza, 256 F.3d 718, 723 (7th Cir. 2001); United States v. Concepcion, 942 F.2d 1170, 1172 (7th Cir. 1991)); United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002); United States v. Acosta, 965 F.2d 1248, 1252 (3d Cir.1992); United States v. Holland, 755 F.2d 253, 255-56 (2d Cir. 1985); United States v. Penco, 612 F.2d 19, 24-25 (2d Cir. 1979); see also United States v. Boden, 854 F.2d 983, 990 (7th Cir. 1988), including closets, see, e.g., United States v. Williams, No. 3:05-cr-191, 2007 WL 4302971, at *4-5 (D. Conn. Dec. 6, 2007) (citing United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999)), basements, see, e.g., United States v. Cruz Pagan, 537 F.2d 554, 558 (1st Cir.1976), and basement storage areas, see, e.g., United States v. McGrane, 746 F.2d 632, 634 (8th Cir.1999); United States v. Thornley, 707 F.2d 622, 624-25 (1st Cir. 1983). This is so

6

because, even though a defendant may harbor a subjective expectation of privacy in such an area (e.g., by hiding contraband there, see United States v. Rheault, 561 F.3d 55, 59 (1st Cir.), cert. denied, 130 S. Ct. 178 (2009); Williams, 2007 WL 4302971, at *4), the expectation is not reasonable when other tenants also have access and may admit others to the area, see, e.g., United States v. Nettles, 175 F. Supp. 2d 1089, 1094 (N.D. Ill. 2001); Brzozowski v. Gorniak, No. 93 C 3830, 1995 WL 743808, at *7 (N.D. Ill. Dec. 12, 1995) (collecting cases). A few cases vary from the general rule, but they typically involve buildings occupied by a limited number of tenants, such as a small, two-family house inhabited only by family members. E.g., United States v. King, 227 F.3d 732, 747-50 (6th Cir. 2000).

Based on the evidence presented in this case, the general rule applies. The record shows that this was a fairly large building, containing both commercial and residential units, and that multiple tenants had access to the basement area where the contraband was found. This is not a case involving a duplex, like King, the decision on which defendant primarily relies. It is also worth noting that the expectation of privacy in a commercial building, like this one, is different from, and less than, a similar expectation in an individual's home. See Minnesota v. Carter, 525 U.S. 83, 90 (1998).

Defendant stresses that the police found no one in the building, even though the search was conducted during business hours, distinguishing his case from those applying the general rule. But the record shows that the officers did not conduct a sweep of the entire building, and Correa did not recall whether the other businesses, which were plainly operating in the building at the time of the evidentiary hearing, were also there at the time the warrant was executed. (See Govt. Ex. 1.) Thus, I need not conclude, as defendant suggests I must, that there were no other tenants at the time. The affidavits from defendant and Morgan may support a finding

7

that no one else had access to the basement through the car wash, but Correa's testimony establishes that others could access the basement from the other units in the building. Defendant presents no affidavit or testimony from anyone with any personal knowledge regarding those units. Thus, I cannot find, as defendant suggests, that only three people (Coleman, Morgan and defendant) had access to the basement. The doors permitting one to access the basement from the car wash may have been locked, but the entry ways from the other areas in the building were not.

Defendant notes that the government produced no evidence contradicting his assertion in the affidavits that he was the only person granted access to the closet. But defendant's subjective belief that this was so (and Morgan's similar, hearsay-derived understanding) cannot overcome the objective facts. Other tenants in this building could enter the area through the various doorways Detective Correa described. Nor does defendant present any evidence that Coleman leased the basement for his exclusive use or otherwise had authority to grant defendant exclusive use of the closet or any other part of the basement. During the hearing before the magistrate judge, the owner of the building was identified as Demetrius Thompson (R. 21 at 50), and defendant has presented no affidavit or testimony from him regarding this issue.[4]

Finally, defendant argues that he took precautions to keep the contents of the closet and

---

[4] Nor does defendant present testimony from Coleman. It is also worth noting that there is some tension between defendant's claim that Coleman granted him exclusive use of this closet, and his argument that officers exceeded the scope of the warrant when they entered the basement. Either the basement was Coleman's area, in which case it may have been covered by the search warrant for his business, or it was not, in which case Coleman had no authority to grant defendant exclusive use of any portion of it. Cf. United States v. Legault, 323 F. Supp. 2d 217, 222 (D. Mass. 2004) (discussing a similar "Catch-22").

8

the bag private.  However, the record shows that the closet was not locked; indeed, Correa testified that the closet door had no knob, hung off kilter, could not be closed securely, and was propped shut with a car hood.  Nor was the closet in any way marked as separate from Coleman's venture.  I also credit Correa's testimony that he observed the hockey bag to be open when he looked in the closet, as depicted in exhibit 16, and that he could see the guns without opening the bag.[5]

**B.    Good Faith**

Before the magistrate judge, the government argued in its response brief that even if the warrant was flawed, the good faith exception should apply.  See United States v. Leon, 468 U.S. 897, 922-23 (1984) (establishing an exception to the exclusionary rule where the police rely in good faith on a search warrant subsequently deemed invalid).  Defendant replied that because the officers exceeded the scope of the warrant, the exception did not apply.  See King, 227 F.3d at 754 (declining to apply Leon where the agent unreasonably extended the search to the basement of the duplex).

Although an officer will usually behave unreasonably by exceeding the scope of a search warrant, the Supreme Court has held that in some cases the good faith exception may nevertheless apply.  Massachusetts v. Sheppard, 468 U.S. 981, 988 (1984); see also Maryland v. Garrison, 480 U.S. 79, 87 (1987) (recognizing "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and

---

[5]In any event, even if the bag had been closed, defendant must show an expectation of privacy both in the area and the object.  See United States v. Hershenow, 680 F.2d 847, 855-56 (1st Cir. 1982) (holding that sealing the container searched will not suffice to demonstrate standing when the defendant fails to show a legitimate expectation of privacy in the place where the container was stored).

9

executing search warrants"). If it was objectively reasonable for the officer to believe that the warrant authorized him to search a particular area, even though it is later determined that the search exceeded the strict textual scope of the warrant, the evidence need not be suppressed. U.S. ex rel. Kytka v. Washington, 921 F. Supp. 499, 505 (N.D. Ill. 1996), aff'd, 107 F.3d 873 (7th Cir. 1997) (table) (citing United States v. Curry, 911 F.2d 72, 78 (8th Cir. 1990); United States v. Bonner, 808 F.2d 864, 866-67 (1st Cir. 1986)); see also United States v. Biles, 100 Fed. Appx. 484, 494 (6th Cir. 2004) (noting that "the Leon exception may save a search that exceeds the scope of a warrant if officers reasonably mistake what may be found within a home's curtilage, citing United States v. Gorman, 104 F.3d 272, 275-76 (9th Cir.1996); United States v. Earls, 42 F.3d 1321 (10th Cir.1994); United States v. Asselin, 775 F.2d 445 (1st Cir. 1985)); United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1107 (3d Cir. 1989) (holding that the good faith exception could apply if evidence outside the scope of the warrant was seized, if the officers acted reasonably).

In this case, although the evidence adduced at the evidentiary hearings shows that the basement is a common area and not technically or exclusively part of the car wash, it was objectively reasonable for Correa to believe, at the time of the search, that the basement area containing the closet was part of Personal Touch Car Wash.[6] That area contained items similar to what the officers found upstairs, such as motorcycle and auto parts, as well as the couch, refrigerator, coffee table and soda cans that led Correa to believe it was a recreational area. (R. 21 at 40.) It also contained a "car wash" sign. (Ex. 13.) Given these items, it was reasonable for Correa to surmise, as he testified at the hearing before the magistrate judge,

---

[6]The warrant indicates that the car wash is in the rear of this two story building, but it does not specifically indicate how many floors it comprised.

that this area was connected to the car wash.[7] (R. 21 at 40.)

It was also reasonable for Correa to believe that the closet within this area was connected to the car wash. The closet was not marked as pertaining to a separate business; indeed, nothing the officers found that day suggested that another business, or someone named Donald Jefferson, operated within Coleman's car wash. (R. 21 at 37.) This was not a situation where the officers searched an area that they plainly should have known was unconnected to the premises identified in the warrant. Compare King, 227 F.3d at 754 (explaining that the good faith exception would not apply if the officers were put on notice that they were searching the wrong unit in a multi-unit building), with United States v. Evans, 92 F.3d 540, 543 (7th Cir. 1996) (explaining that a warrant to search a building authorizes the police to search any closet or other closed compartment in the building that is large enough to contain the contraband they are looking for).

Therefore, I find in the alternative that the officers acted in good faith, that the search of the closet was reasonable under these specific circumstances, and that employing the exclusionary rule here would not serve the purpose of deterring police misconduct. See Hudson v. Michigan, 547 U.S. 586, 591 (2006) (explaining that suppression of evidence should be a last resort, not the first impulse, and that the exclusionary rule should be applied only where its deterrence benefits outweigh its substantial social costs); see also Herring v. United States, 129 S. Ct. 695, 700 (2009) (explaining that the exclusionary rule is not an individual right and applies only where it results in appreciable deterrence).

---

[7]I also note that the officers declined to search the areas they believed unconnected to the car wash, which further demonstrates the reasonableness of their conduct.

11

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is adopted, and defendant's motion to suppress is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **STATUS** on **Thursday, April 1, 2010, at 2:45 p.m.**

Dated at Milwaukee, Wisconsin, this 22nd day of March, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

12

Case 2:09-cr-00018-LA   Filed 03/22/10   Page 12 of 12   Document 34